# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CENTER FOR LAW AND
JUSTICE,

        *Plaintiff*,

  v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        *Defendant*.

Civil Action No. 16-2188 (TJK)

## MEMORANDUM OPINION AND ORDER

Plaintiff American Center for Law and Justice ("ACLJ") has requested records from

Defendant Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552. The records relate to a June 2016 meeting between then-Attorney General Loretta

Lynch and former President Bill Clinton that occurred on board an airplane in Arizona. The

parties have cross-moved for summary judgment. After initially agreeing to limit the scope of

the instant motions to the issue of DOJ's withholdings of certain material under FOIA's

exemptions, ACLJ now also argues that DOJ failed to conduct an adequate search. DOJ argues

that both its search and its withholdings were proper.

    For the reasons explained below, DOJ's motion for summary judgment will be granted

in part and denied in part, and ACLJ's cross-motion will be denied. DOJ shall make a

supplemental submission and renewed motion as set forth below by October 9, 2018. ACLJ

shall file any response and cross-motion by October 23, 2018.

## I.    Factual and Procedural Background

According to the complaint, on June 27, 2016, then-Attorney General Lynch and former

President Clinton met aboard a parked airplane at Sky Harbor International Airport in Phoenix,

Arizona (the "airplane meeting"). *See* ECF No. 1 ("Compl.") ¶ 7. President Clinton's wife Hillary Clinton, then a candidate for President, was connected to an ongoing DOJ investigation at the time. *See* ECF No. 23 ("Pl.'s Br.") at 2. Given that context, the airplane meeting quickly became the subject of significant press attention. *See id.* at 10-11.

On July 15, 2016, ACLJ filed a FOIA request with DOJ that sought various categories of documents relating to the airplane meeting. *See* ECF No. 22-1 ("Brinkmann Decl.") ¶ 3 & Ex. A. On November 2, 2016, having not yet received any response from DOJ, ACLJ filed the instant action. Compl. On November 18, 2016, DOJ acknowledged receipt of the FOIA request. Brinkmann Decl. ¶ 5 & Ex. B. In July and August 2017, DOJ made two productions totaling 413 pages to ACLJ. *See id.* ¶¶ 6-7 & Exs. C-D. The productions included redactions that DOJ made pursuant to FOIA Exemptions 5, 6, and 7(C). *See id.* DOJ informed ACLJ that, in its view, these productions satisfied its obligations under FOIA. *Id.* ¶ 7 & Ex. D.

The parties met and conferred to discuss the productions. ECF No. 20 ("9/27/17 Status Report") ¶ 4. During the meet-and-confer process, ACLJ identified several concerns about DOJ's withholdings. *See id.* ¶ 5. In response, DOJ revised the redactions it had made to two documents. *Id.* ¶ 6. ACLJ informed DOJ that it continued to dispute DOJ's invocation of the deliberative-process privilege under Exemption 5 for certain documents, and that, more generally, it continued to challenge DOJ's compliance with FOIA's segregability requirement for the withholdings under Exemption 5. *See* ECF No. 23-1 ("Southerland Decl.") ¶ 3; ECF No. 23-3 (email between counsel for the parties).

On September 27, 2017, the parties filed a joint status report that set forth an agreed-upon plan for further proceedings in the case. 9/27/17 Status Report. The report explained that the parties had "determined that motions practice will be necessary to resolve Plaintiff's remaining

objections to Defendant's withholdings." *Id.* ¶ 7. The parties proposed a briefing schedule for motions for summary judgment, which the Court adopted by minute order. *See id.*; Minute Order of October 12, 2017.

The parties then filed the instant motions and related briefing. ECF No. 21; ECF No. 21-1 ("Def.'s Br."); Pl.'s Br.; ECF No. 25 ("Def.'s Reply"); ECF No. 27 ("Pl.'s Reply"). In its opening brief, DOJ sought only to support the redactions made to 11 documents, which it understood to be the only documents still in dispute. Def.'s Br. at 2 & n.1. In its cross-motion, ACLJ sought to broaden the dispute in two respects. First, it explained that DOJ had misinterpreted the scope of its objections to DOJ's withholdings, which encompassed not only DOJ's Exemption 5 redactions in the 11 documents but also, more generally, whether DOJ had adequately segregated "factual information" in all redacted documents. Pl.'s Br. at 5 n.1. Second, despite the parties' earlier agreement that only DOJ's redactions were at issue, ACLJ argued that DOJ's search was inadequate, as well. *Id.* at 11-12. ACLJ explained that, since the 9/27/17 Status Report, it had received a document from another agency that it believed DOJ should have produced in response to the FOIA request. *Id.* In its reply, DOJ provided additional information about its search terms and withholdings. *See* Def.'s Reply; ECF No. 25-1 ("Second Brinkmann Decl."); ECF No. 25-2 ("Def.'s Ex. A").

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor."

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

"[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Congress enacted FOIA in 1966 to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *EPIC v. DHS*, 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).

In FOIA cases, "to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Mobley v. CIA*, 806 F.3d 568, 580 (D.C. Cir. 2015) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "The court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* at 580-81 (quoting *Oglesby*, 920 F.2d at 68). "The court applies a 'reasonableness' test to determine the 'adequacy' of a search methodology, consistent with congressional intent tilting the scale in favor of disclosure . . . ." *Morley*, 508 F.3d at 1114 (quoting *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998)).

In addition, if the agency has invoked any of FOIA's exemptions, the "burden is on the agency to justify withholding the requested documents, and the FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).  That is, the agency must provide a "logical" or "plausible" justification for the exemption.  *Id.* (quoting *Wolf v. CIA*, 473 F.3d 370, 375 (D.C. Cir. 2007)).  The agency cannot rely on "conclusory and generalized allegations of exemptions."  *Morley*, 508 F.3d at 1115 (quoting *Founding Church of Scientology of Wash., D.C., Inc. v. NSA*, 610 F.2d 824, 830 (D.C. Cir. 1979)).

FOIA further requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b).  Before approving the government's withholdings, the court has an affirmative duty to ensure that the segregability requirement is satisfied, even if it must do so *sua sponte*.  *See Morley*, 508 F.3d at 1123.

## III.  Analysis

For the reasons explained below, the Court will grant DOJ's motion for summary judgment except as it relates to two particular documents.  The Court will order DOJ to provide supplemental information justifying the redactions in those two documents.  ACLJ's motion will be denied.

### A.  The Adequacy of DOJ's Search

ACLJ argues that DOJ's search was inadequate because the search failed to turn up a responsive document that subsequently came into ACLJ's possession via another FOIA request. *See* Pl.'s Br. at 11-12.  And ACLJ's reply adds two additional grounds for this argument: that DOJ (1) used search terms that were too limited, and (2) improperly narrowed the time frame of

certain searches. *See* Pl.'s Reply at 8-9. The Court concludes, however, that ACLJ waived its right to challenge the adequacy of DOJ's search in the 9/27/17 Status Report.

Parties may either forfeit or waive their rights during the course of litigation. "[F]orfeiture is the failure to make the timely assertion of a right[;] waiver is the intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 n.1 (2017) (alterations in original) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (internal quotation marks omitted). "Whether a particular right is waivable; whether the [waiving party] must participate personally in the waiver; whether certain procedures are required for waiver; and whether the [party's] choice must be particularly informed or voluntary, all depend on the right at stake." *Olano*, 507 U.S. at 733. In some contexts, waiver is possible only if accompanied by extensive procedural protections ensuring that it is knowing and voluntary. That is true, for example, when a criminal defendant, whose liberty is at stake, waives important constitutional rights. In civil cases, important constitutional rights may be waived before the parties ever step foot in court, although there must be clear evidence that the waiver was knowing, voluntary, and intelligent. *See Fuentes v. Shevin*, 407 U.S. 67, 94-96 (1972); *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-87 (1972).

But once the parties have appeared in a civil matter, they routinely agree to narrow the issues in dispute or to give up important procedural rights. If they could not, civil litigation would not serve its purpose of offering a "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Accordingly, the Federal Rules of Civil Procedure require courts to hold pretrial conferences at which the parties, under the court's supervision, will "formulat[e] and simplify[] the issues." Fed. R. Civ. P. 16(c)(2)(A). When the parties make representations at a conference about which issues remain outstanding, they may fairly be held to those oral

representations.  *See Genereux v. Raytheon Co.*, 754 F.3d 51, 57-59 (1st Cir. 2014).  The rules also allow the parties to give up important procedural rights orally or in writing.  For example, the Seventh Amendment right to a jury trial may be waived in an oral or written stipulation.  *See* Fed. R. Civ. P. 39(a)(1).  Indeed, litigants can at any time dismiss a civil action in its entirety, with prejudice, simply by signing and filing a joint stipulation to that effect.  Fed. R. Civ. P. 41(a)(1)(A)(ii).

These considerations compel the conclusion that, where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles.  Given the volume of FOIA litigation in this District, and the fact that FOIA plaintiffs located anywhere in the country may file here, *see* 5 U.S.C. § 552(a)(4)(B), written status reports often play the same role in FOIA cases as pretrial conferences do in other civil litigation.  Just as a party may agree to narrow the case during a pretrial conference, *see Genereux*, 754 F.3d at 57-59, a FOIA plaintiff may agree to do so in a written status report.  Having voluntarily narrowed the case to a set of agreed-upon issues, the plaintiff may be said to have waived the others.

Holding parties to such agreements is also consistent with FOIA itself.  As Judge McFadden persuasively explained in a recent opinion, FOIA's text contemplates that plaintiffs will narrow the scope of their requests.  *DeFraia v. CIA*, 311 F. Supp. 3d 42, 47-48 (D.D.C. 2018).  Thus, when a plaintiff narrows his FOIA request in a joint status report, it supersedes any broader request set forth in the plaintiff's complaint.  *Id.*; *see also Gilman v. DHS*, 32 F. Supp. 3d 1, 22-24 (D.D.C 2014) (holding parties to narrowing of request in joint status report and subsequent order); *People for Am. Way Found. v. DOJ*, 451 F. Supp. 2d 6, 11-12 (D.D.C. 2006) (holding plaintiff may narrow request even without defendant's agreement).  Similarly, where

a plaintiff agrees in a joint status report not to challenge the adequacy of the government's search, she effectively narrows her request to cover only the documents the government has already located.

Here, ACLJ waived the adequacy issue by voluntarily agreeing, in the 9/27/17 Status Report, to narrow the scope of the case. As ACLJ (a sophisticated litigant) no doubt understands, FOIA cases often turn on two issues: the adequacy of the government's search, and the propriety of the government's withholding of responsive material. The 9/27/17 Status Report—which ACLJ's counsel signed electronically and uploaded to the Court's electronic filing system on behalf of both parties—could not have been clearer that, by agreement of the parties, only the second issue remained in dispute. The purpose of the status report was "to propose an agreed-upon briefing schedule to address *the remaining unresolved issues*." 9/27/17 Status Report at 1 (emphasis added). It explained that the parties had conferred "in an attempt to address and, if possible, resolve *any remaining issues* with regards to Plaintiff's FOIA request," namely certain "objectionable withholdings" ACLJ had identified. *Id.* ¶ 4 (emphasis added). The report further explained that, after reaching an impasse, the parties had "determined that motions practice [would] be necessary *to resolve Plaintiff's remaining objections to Defendant's withholdings*." *Id.* ¶ 7 (emphasis added). On the basis of the status report, the Court adopted the parties' proposed briefing schedule by minute order dated October 12, 2017. The report and subsequent order thus left the parties and the Court in agreement on the status of the case: the parties had resolved any dispute over the adequacy of the search and would litigate the only remaining issues (concerning the validity of DOJ's withholdings) in the forthcoming summary judgment motions. In short, by agreeing to limit the Court's involvement to deciding the parties'

dispute about DOJ's withholdings, ACLJ knowingly and voluntarily waived all other issues it might reasonably have anticipated, including any challenge to the adequacy of DOJ's search.

Even where a waiver is knowing and voluntary, courts will sometimes decline to enforce the waiver where it would be unjust to do so. For example, when a criminal defendant has waived his right to appeal, courts will not enforce the waiver if there is a "colorable claim" of "ineffective assistance of counsel," or if a procedural sentencing error "results in a miscarriage of justice." *United States v. Adams*, 780 F.3d 1182, 1183 (D.C. Cir. 2015) (quoting *United States v. Guillen*, 561 F.3d 527, 530-31 (D.C. Cir. 2009)). Similarly, where the parties to a civil action have narrowed the issues in a final pretrial order, it may nonetheless be modified to prevent "manifest injustice." *Harper v. Albert*, 400 F.3d 1052, 1063 (7th Cir. 2005) (quoting Fed. R. Civ. P. 16(e)). Another judge in this District has held that, at a minimum, a showing of good cause is required to reintroduce an issue that has been explicitly waived in FOIA litigation. *Shapiro v. DOJ*, No. 13-555 (RDM), 2016 WL 3023980, at *6-7 (D.D.C. May 25, 2016); *see also* Fed. R. Civ. P. 16(b)(4) (providing for modification of scheduling order "only for good cause and with the judge's consent").

ACLJ claims to have abandoned its agreement, memorialized in the 9/27/17 Status Report, that the adequacy of DOJ's search was not in dispute because it subsequently received, from another agency, a single responsive document that DOJ had not produced. *See* Southerland Decl. ¶¶ 5-7. Until that time, it claims, it had "no reason to believe" that DOJ's search was inadequate. *Id.* ¶ 4. The Court finds this an unpersuasive basis to let ACLJ escape from its agreement. Adequacy of the government's search is a potential issue in every FOIA case. ACLJ had every opportunity to discuss DOJ's search methodology with DOJ during the meet-and-confer process. And after meeting and conferring, ACLJ represented that it was not challenging

DOJ's search.  Moreover, there is no suggestion here that DOJ procured ACLJ's agreement by misinforming ACLJ about the scope of its search.  In this context, the fact that DOJ failed to produce one particular responsive document is immaterial.  Indeed, it is well established that such failures do not render the government's search unreasonable.  *See, e.g.*, *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  (And in fact, but for a technical glitch, DOJ's search terms would have uncovered that document.  *See* Def.'s Reply at 12-13.) Thus, there is nothing unjust about holding ACLJ to its prior agreement and finding that it has waived its challenge to the adequacy of DOJ's search, nor is there good cause for allowing ACLJ to reintroduce the issue.

### B.    DOJ's Withholdings

ACLJ has made three challenges to DOJ's withholdings under Exemption 5.[1]  First, ACLJ asserts that DOJ has improperly failed to provide a *Vaughn* index to the Court.  *See* Pl.'s Br. at 4-6; Pl.'s Reply at 2-4.  Second, ACLJ asserts that DOJ has made improper redactions under Exemption 5 in 11 specified documents.  *See* Pl.'s Br. at 6-11; Pl.'s Reply at 4-6.  Third, ACLJ asserts that DOJ's redactions under Exemption 5 (apparently including redactions in the 11 specified documents and other documents that neither party has submitted to the Court) generally fail to comply with FOIA's segregability requirement because DOJ has withheld "factual" material not protected by the deliberative-process privilege.  *See* Pl.'s Br. at 5 n.1; Southerland Decl. ¶ 3; Pl.'s Reply at 6-8.  The Court will address each argument in turn.

---

[1] In the 9/27/17 Status Report, the parties suggested that withholdings under Exemption 6 might also be at issue.  *See* 9/27/17 Status Report ¶¶ 3-4.  Accordingly, DOJ introduced a declaration supporting the redactions under Exemption 6 in the one document it understood ACLJ to have challenged on this ground.  *See* ECF No. 22-2 (Declaration of David M. Hardy).  In the face of this evidence, ACLJ has abandoned its challenge to Exemption 6.  *See* ECF No. 23-5 ¶ 8.  In light of DOJ's uncontroverted declaration, it is entitled to summary judgment on Exemption 6.

## 1.     *Vaughn* Index

DOJ has not provided a *Vaughn* index to the Court in this action.  In cases involving the deliberative-process privilege, courts in this District often require a *Vaughn* index containing several key pieces of information for each document in dispute: "(1) what deliberative process is involved, (2) the role played by the documents in issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents."  *Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017) (internal citations, quotation marks, and alterations omitted).  Contrary to ACLJ's arguments, however, the law does not inflexibly require a *Vaughn* index in every FOIA case.  As the D.C. Circuit has explained:

> [W]e focus on the functions of the *Vaughn* index, not the length of the document descriptions, as the touchstone of our analysis. Indeed, an agency may even submit other measures in combination with or in lieu of the index itself.  Among other things, the agency may submit supporting affidavits or seek *in camera* review of some or all of the documents "so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege."  Any measure will adequately aid a court if it "provide[s] a relatively detailed justification, specifically identif[ies] the reasons why a particular exemption is relevant and correlat[es] those claims with the particular part of a withheld document to which they apply."

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006) (alterations, except first, in original) (citations omitted) (quoting *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994); *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

In this case, DOJ has supported its invocation of Exemption 5 in other ways.  It has provided a declaration describing the categories of information it has withheld, and DOJ's basis for asserting the deliberative-process privilege over each category.  Brinkmann Decl. ¶¶ 13-17. It has also, in a supplemental declaration, identified the control number of each document

produced to ACLJ with redactions, broken down by category. Second Brinkmann Decl. ¶ 31. Finally, DOJ has filed on the record copies of the 11 specific documents ACLJ has challenged, with the redactions applied. Def.'s Ex. A.[2]

The Court concludes that, with two exceptions noted below, DOJ has provided sufficient information to evaluate its invocation of the deliberative-process privilege. Therefore, the Court will not require DOJ to submit a *Vaughn* index.

## 2.        Specific Documents in Dispute

The parties have introduced a set of 11 documents with disputed withholdings under Exemption 5. Def.'s Ex. A. In each case, DOJ has redacted information under the deliberative-process privilege, on the ground that the documents contain DOJ officials' discussions about how to handle press inquiries about the airplane meeting. *See* Brinkmann Decl. ¶ 13.

"The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch*, 449 F.3d at 151. A document is "predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). The purpose of the rule is "to encourage 'honest and frank communication within the agency' without fear of public disclosure." *Id.* (quoting *Coastal States Gas*, 617 F.2d at 866). While the D.C. Circuit does not appear to have addressed the

---

[2] ACLJ accuses DOJ of omitting a "crucial document" in its submission to the Court. Pl.'s Reply at 5. The Court considers this a serious accusation and has carefully compared DOJ's version of the documents in dispute, attached as Exhibit A to its reply, Def.'s Ex. A, with ACLJ's version, attached as Exhibit A to its cross-motion, ECF No. 23-2 ("Pl.'s Ex. A"). ACLJ attaches only two documents that DOJ does not. The first is an email that contains redactions under Exemption 6, but not under Exemption 5. *See id.* at 22. It is unsurprising that DOJ did not provide this document: as already mentioned, ACLJ has abandoned its challenge to Exemption 6 in the face of a declaration clearly supporting it. *See supra* note 1. The second document is an email that does not contain any redactions whatsoever. *See* Pl.'s Ex. A at 23. Thus, ACLJ's own submission does not bear out the accusation it has made.

application of this privilege to public-relations issues, the overwhelming consensus among judges in this District is that the privilege protects agency deliberations about public statements, including the use of talking points. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, 306 F. Supp. 3d 97, 115 (D.D.C. 2018); *Comm. on Oversight & Gov't Reform, U.S. House of Rep. v. Lynch*, 156 F. Supp. 3d 101, 111-12 (D.D.C. 2016). The Court agrees and thinks this conclusion is inescapable: if agency deliberations about public statements were FOIA-able, then agencies would be hamstrung in their dealings with the press, defeating the very transparency FOIA aims to foster. Nonetheless, as another judge in this District has concluded, agencies must provide context about the particular press-related deliberations at issue and cannot rely solely on conclusory labels (such as "draft press release"). *See Heffernan v. Azar*, No. 15-cv-2194 (RBW), 2018 WL 3150214, at *20-21 (D.D.C. June 27, 2018).

When read in light of DOJ's affidavits, the documents at issue largely speak for themselves to justify DOJ's redactions. For example, DOJ has redacted portions of email communications among officials from different DOJ offices—the Office of the Attorney General, Office of Legislative Affairs, and Office of Press Affairs—discussing how to respond to particular media inquiries identified in the unredacted text. *See, e.g.*, Def.'s Ex. A at 47-54 (document 0.7.9269.5186). In another email chain, officials from the Office of the Attorney General discuss providing "guidance" to the FBI about a similar press inquiry; the content of this guidance is redacted. *See id.* at 16-17 (document 0.7.9269.5280).[3] DOJ's declarant confirms

---

[3] ACLJ suggests that, because the FBI is a separate agency, the deliberative-process privilege does not cover this email. *See* Pl.'s Reply at 5 n.5. But Exemption 5, by its own terms, reaches "inter-agency" communications. 5 U.S.C. § 552(b)(5). Thus, the deliberative-process privilege has been held to protect an opinion prepared by DOJ's Office of Legal Counsel for the FBI. *Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 7-10 (D.C. Cir. 2014). In fact, the deliberative-process privilege under Exemption 5 sometimes reaches communications with private parties. *See Nat'l Inst. of Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 680-81 (D.C. Cir. 2008).

that the redactions cover portions of emails that "evaluate and analyze press coverage and make recommendations and/or consider possible options in responding to press and other inquiries." Brinkmann Decl. ¶ 14. The Court thus concludes that, apart from two exceptions set forth below, DOJ has met its burden to show that the redactions reflect the "give-and-take of the consultative process" over how DOJ should respond to media inquiries about the airplane meeting.

ACLJ advances several arguments for lifting the redactions, but none has merit. ACLJ argues that the deliberative-process privilege, which is qualified, is overcome here by the public's need for the information. Pl.'s Br. at 10-11. This argument fails as a matter of law. As the D.C. Circuit has explained, while the privilege is qualified, this "characteristic of the deliberative process privilege is not at issue in FOIA cases." *In re Sealed Case*, 121 F.3d 729, 737 n.5 (D.C. Cir. 1997). Similarly, while attorney work product enjoys only a qualified protection from discovery in civil litigation, the qualified nature of that protection is irrelevant under FOIA. *See Williams & Connolly v. SEC*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) (citing *FTC v. Grolier, Inc.*, 462 U.S. 19, 26-27 (1983)).

Next, ACLJ argues that DOJ has improperly redacted "talking points" in its production. Pl.'s Br. at 7-8. Several emails at issue include various iterations of a set of talking points prepared for Attorney General Lynch, who used them in a June 28 press conference. *See, e.g.*, Def.'s Ex. A at 2-7 (document 0.7.9269.5275). Some are plainly drafts circulated to solicit comments. *See, e.g.*, *id.* at 36-38 (email from Melanie Newman dated June 28, 2016, at 2:59 p.m.).[4] Officials eventually settled on a "[f]inal version" of the talking points in advance of the

---

[4] The Court notes that neither ACLJ nor DOJ has provided a version of this email chain bearing a control number. *See* Def.'s Ex. A at 24; Pl.'s Ex. A at 34. This omission is particularly

press conference.  *Id.* at 2 (document 0.7.9269.5275).  An employee from the Office of the

Attorney General reported that Attorney General Lynch "stuck to the talking points" at the June

28 press conference.  *Id.* at 40 (document 0.7.9269.5166).  On June 29, the Director of DOJ's

Office of Press Affairs forwarded the talking points to an official in the Office of Legislative

Affairs, noting that "OLA is going to get questions about this and I think the talking points we

drafted will be useful for your purposes."  *Id.* at 25.  The Director also subsequently forwarded

the talking points to other employees alongside the transcripts of press appearances by Attorney

General Lynch on June 28 and June 29.  *See id.* at 10-13 (documents 0.7.9269.6298 and

0.7.9269.6923).  The talking points are fully redacted in each of these iterations.

ACLJ asserts that many versions of the talking points, in particular the "final" versions

and versions that were shared after the Attorney General's remarks, were not predecisional.  Pl.'s

Br. at 7-8; Pl.'s Reply at 4-6.  This argument fails to appreciate the nature of talking points

generally and the particular context surrounding the June 28 talking points.  Talking points are

typically documents "prepared by [government] employees for the consideration of

[government] decision-makers."  *Judicial Watch, Inc. v. U.S Dep't of Commerce*, 337 F. Supp.

2d 146, 174 (D.D.C. 2004).  There may be some circumstances where "talking points" are

intended by agency decisionmakers to be followed literally such that they, in and of themselves,

represent the agency's decision about what to say.  But the "final" version of talking points

prepared by more junior staffers for a more senior official is rarely the final decision about what

the senior official will say.  *See ACLU v. DHS*, 738 F. Supp. 2d 93, 111-12 (D.D.C. 2010)

(concluding that "final" talking points fell within deliberative-process privilege).  Rather, a

_____

frustrating on the part of DOJ, which chided ACLJ for failing to include control numbers in its
submission.  *See* Def.'s Reply at 3 n.3.  Nonetheless, the Court concludes that this omission does
not interfere with its ability to decide the instant motions.

senior official—especially one as high-ranking as the Attorney General—may elect to use all, some, or none of the talking points prepared for her.  Perhaps to the chagrin of their junior staffers, senior officials have a tendency to improvise.  And even when senior officials do follow their talking points, they often do not recite the points word-for-word.  The particular factual context surrounding the June 28 talking points, which were written for Attorney General Lynch but concerned events she had personally witnessed, strongly suggests that the talking points were no more than advice from subordinates.  The final decision was what Attorney General Lynch actually said to the media, which is, of course, already a matter of public record.

Nor does the subsequent use of the talking points modify this analysis.  The point of the deliberative-process privilege is to protect internal agency deliberations; it would make no sense for the privilege to turn on whether the internal advice was ultimately followed.  As the D.C. Circuit has explained:

> [T]he writer [of a draft] does not know at the time of writing whether the draft will evolve into a final document.  But the writer needs to know at the time of writing that the privilege will apply and that the draft will remain confidential, in order for the writer to feel free to provide candid analysis.  A privilege contingent on later events—such as whether the draft ultimately evolved into a final agency position—would be an uncertain privilege, and as the Supreme Court has said, an uncertain privilege is "little better than no privilege at all."

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)).  That is, the deliberative-process privilege should be judged based on the purpose of the document when it was created, not in hindsight.  The privilege over a predecisional document is "waived" only when the agency publishes the document or expressly adopts the document's reasoning as its own.  *See Elec. Frontier Found. v. DOJ*, 739 F.3d 1, 10-12 (D.C. Cir. 2014).

Applied here, these principles mean that the talking points remain protected even though Attorney General Lynch followed them and even though they were repurposed for other press inquiries. A government employee drafting talking points to advise a senior official needs to know that her advice will remain privileged regardless of whether the official ultimately sticks to the script or decides to extemporize. It is accordingly of no moment that Attorney General Lynch ultimately "stuck to the talking points"—the point is that she might not have. And given that talking points are typically used on the fly, it would rarely be the case that an official formally "adopts" talking points simply by relying on them; certainly, no facts suggest that to be true here. Moreover, sticking to talking points often does not entail a verbatim recitation, leaving open the possibility that "a simple comparison" of the talking points with the official's public remarks would reveal the agency's deliberations. *See Mapother v. DOJ*, 3 F.3d 1533, 1538 (D.C. Cir. 1993). Finally, the mere fact that the June 28 talking points were forwarded in later emails does not deprive them of protection. "Post-decisional documents properly fall under the deliberative[-]process privilege when they recount or reflect pre-decisional deliberations." *Am. Immigration Council v. DHS*, 21 F. Supp. 3d 60, 75 (D.D.C. 2014) (alteration in original) (quoting *Judicial Watch v. U.S. Dep't of Treasury*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011)). That applies in full to the emails forwarding the June 28 talking points.

Notwithstanding the foregoing analysis, two documents lack adequate context for the Court to undertake a proper evaluation of the deliberative-process privilege. The first, bearing control number 0.7.9269.5105, is an email dated July 11, 2016, attaching a document called "Top Line TPs (Final)." Def.'s Ex. A at 20-23. The attached talking points are redacted in full. *See id.* The Court has no context for these talking points, unlike the June 28 talking points discussed above. In particular, the Court has no basis to assess whom the talking points were

drafted for, how they were used, or what their subject matter was (apart from the fact that they somehow related to the airplane meeting). Thus, DOJ has not provided "the minimum facts needed for the invocation of the deliberative process privilege." *Heffernan*, 2018 WL 3150214, at *21.

The second document, bearing control number 0.7.9269.6094, is an email chain dated June 30, 2016. Def.'s Ex. A at 14-15. The chain began when a news outlet emailed DOJ requesting an interview with Attorney General Lynch about the airplane meeting. *See id.* In an internal email, the Director of DOJ's Office of Press Affairs advised as follows: "Decline." *Id.* Two subsequent emails in the chain, consisting of short messages between the Director and another Office of Press Affairs employee, are redacted. *See id.* Given that DOJ had already decided how to respond to the particular request, it is unclear how these messages are "predecisional" as required to invoke the deliberative-process privilege. It is possible that they are—for example, the employees may have been discussing how to respond to similar requests in the future. Nonetheless, the information provided to the Court is insufficient to make that determination.

Accordingly, the Court will grant summary judgment to DOJ on this issue, except that it will order DOJ to file a supplemental declaration and renewed motion for summary judgment regarding documents 0.7.9269.5105 and 0.7.9269.6094.

### 3. Segregability

ACLJ has also challenged DOJ's compliance with FOIA's segregability requirement. Segregability is adjudicated using a burden-shifting framework. Agencies must provide a "detailed justification" for the non-segregability of the withheld information, although not "so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002). Agencies typically meet their initial burden

by providing a *Vaughn* index and "a declaration attesting that the agency released all segregable material." *Judicial Watch, Inc. v. DOJ*, 20 F. Supp. 3d 260, 277 (D.D.C. 2014). Once that is accomplished, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). The plaintiff must then produce a "quantum of evidence" rebutting this presumption, at which point "the burden lies with the government to demonstrate that no segregable, nonexempt portions were withheld." *Id.*

ACLJ has raised the issue of segregability not only in the 11 particular documents discussed above, but also in connection with Exemption 5 more generally. Pl.'s Br. at 5 n.1; Pl.'s Reply at 7 n.6. As discussed above, DOJ has provided declarations and other information that serve the function of a *Vaughn* index in this case. *See supra* pp. 11-12. DOJ's declarations attest that it conducted a line-by-line review of each document and released all segregable information. Brinkman Decl. ¶ 18; Second Brinkman Decl. ¶ 32. The declarations also explain that, in the talking points and press statements, factual content was generally intertwined with the advice being given and thus could not be segregated. Brinkman Decl. ¶ 18; Second Brinkman Decl. ¶ 32. The Court concludes that this showing is sufficient to trigger the presumption in favor of compliance with FOIA's segregability requirement. *Cf. Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008) (holding government's declaration, which explained the way in which exempt information and nonexempt information were intertwined, was entitled to presumption of good faith). It thus becomes ACLJ's burden to cast doubt on DOJ's compliance.

ACLJ's challenge is an overarching legal one: it argues that any "factual" material in talking points and similar documents is necessarily distinct from "opinions" that are the subject of the privilege. *See* Pl.'s Br. at 8-9; Pl.'s Reply at 6-8. But as the D.C. Circuit has held, "[i]n

some circumstances, even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege." *Elec. Frontier Found.*, 739 F.3d at 13 (alteration in original) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  That is, "purely factual" material can be "so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *Id.* (quoting *In re Sealed Case*, 121 F.3d at 737).  DOJ has asserted that this is the case here.  It explains that attempting to carve out the "factual" material from the talking points and other documents at issue would disclose its internal deliberations regarding how to respond to media inquiries.  Brinkman Decl. ¶ 18; Second Brinkman Decl. ¶ 32.  The Court finds this at least plausible, and perhaps even compelling.  Communications with media often consist of nothing more than a judicious selection and presentation of facts.  Thus, releasing "factual" material from talking points would almost inevitably reveal the agency's deliberations on how to present those facts.  *Cf. Elec. Frontier Found. v. DOJ*, 890 F. Supp. 2d 35, 53 (D.D.C. 2012) (agreeing with government that "employees' deliberative process of selecting and presenting facts" fell within privilege).  ACLJ has provided no good reason to think otherwise in this case, and accordingly has not met its burden to overcome the presumption in DOJ's favor on this issue.

Therefore, the Court concludes that DOJ has satisfied FOIA's segregability requirement.

## IV.    Conclusion and Order

For all of the above reasons, the Court hereby **GRANTS IN PART** and **DENIES IN PART** DOJ's motion for summary judgment (ECF No. 21), and **DENIES** ACLJ's cross-motion for summary judgment (ECF No. 23).  DOJ's motion is denied insofar as it relates to documents

bearing control numbers 0.7.9269.5105 and 0.7.9269.6094, and is granted in all other respects. ACLJ's cross-motion is denied in all respects.

DOJ shall, by **October 9, 2018**, file a supplemental declaration describing in greater detail the basis for its assertion of the deliberative-process privilege over the documents bearing control numbers 0.7.9269.5105 and 0.7.9269.6094. By that date, DOJ shall also file a renewed motion for summary judgment and a supporting memorandum of no more than five double-spaced pages. ACLJ shall file any response and cross-motion by **October 23, 2018**, and its memorandum of law shall be no more than five double-spaced pages. No further briefing on the renewed motions may be filed without leave of court.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: September 7, 2018