UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CENTER FOR LAW AND
JUSTICE,

        *Plaintiff*,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE,

        *Defendant*.

Civil Action No. 16-2188 (TJK)

## MEMORANDUM OPINION

In this action brought under the Freedom of Information Act, American Center for Law and Justice (ACLJ) seeks records from the Department of Justice relating to a June 2016 meeting between then-Attorney General Loretta Lynch and former President Bill Clinton that took place on an airplane in Arizona. The parties' dispute centers on redactions made to documents discussing how to handle press inquiries about the meeting, and in particular the Department's withholding of "talking points" prepared for Attorney General Lynch. The parties previously cross-moved for summary judgment, and the Court granted judgment for the Department on all documents except two for which the Court determined it lacked sufficient context. The Court ordered the parties to file renewed motions for summary judgment on those documents.

Upon review of those new submissions, and for largely the same reasons described in its prior opinion, the Court will grant the Department's motion, deny ACLJ's cross-motion, and enter judgment for the Department.

### I.    Background

ACLJ submitted its request at issue here under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, in July 2016. *ACLJ v. U.S. Dep't of Justice*, 325 F. Supp. 3d 162, 165 (D.D.C.

2018). The request sought various categories of documents relating to a meeting that, according to ACLJ's complaint, occurred between Attorney General Lynch and President Clinton on an airplane parked on the tarmac at an airport in Phoenix, Arizona, on June 27, 2016. *Id.* After the Department had not responded for several months, ACLJ commenced this action in November 2016. *Id.*

Over the course of about a year, the Department made several productions of responsive documents, withholding some documents in whole or in part under FOIA's enumerated exemptions. *Id.* at 165–66. After trying to narrow the areas of disagreement, the parties filed cross-motions for summary judgment. *Id.* at 166. In addition to other disputes not relevant here, ACLJ challenged the Department's withholding of records under FOIA's Exemption 5 and the deliberative-process privilege. *See* 5 U.S.C. § 552(b)(5); *see also ACLJ*, 325 F. Supp. 3d at 166. And to the extent that the Department properly withheld those records, ACLJ challenged the Department's compliance with FOIA's segregability requirement. *ACLJ*, 325 F. Supp. 3d at 175. The records in question all concerned Department discussions about how to handle press inquiries about the airplane meeting. *Id.* at 171.

The Court granted summary judgment for the Department in part. It concluded that the Department properly withheld in whole or in part nine of the disputed documents under FOIA's exemption for materials covered by the deliberative-process privilege. *Id.* at 171–74. And it further found that the Department had met its burden to show that it had withheld no segregable material from those redacted documents. *Id.* at 175–76. As to the two remaining documents, however—(1) an attachment titled "Top Line TPs (Final)" to an email dated July 11, 2016, ECF No. 25-2 at 20–23, and (2) a separate email chain dated June 30, 2016, ECF No. 25-2 at 14–15— the Court determined that it lacked sufficient context to evaluate whether the privilege applied.

*See ACLJ*, 325 F. Supp. 3d at 174–75 (noting that the Court had "no basis to assess whom the talking points were drafted for, how they were used, or what their subject matter was"). The Court thus denied both parties' motions as to those two documents and instructed the Department to file a renewed motion and supplemental declaration. *Id.* at 176. The Department did so in October 2018, *see* ECF No 30, and ACLJ filed its cross-motion and opposition later that month, *see* ECF No. 31.

## II.     Legal Standard

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine dispute of material fact exists, the reviewing court must "view[] the evidence in the light most favorable to the non-movants and draw[] all reasonable inferences accordingly." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

"FOIA 'mandates that an agency disclose records on request, unless they fall within one of nine exemptions.'" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.* (*EPIC*), 777 F.3d 518, 522 (D.C. Cir. 2015) (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 564 (2011)); *see also* 5 U.S.C. § 552(b)(1)–(9). When an agency invokes one of those exemptions, the "burden is on the agency to justify withholding the requested documents, and . . . FOIA directs district courts to determine *de novo* whether non-disclosure was permissible." *EPIC*, 777 F.3d at 522. Typically, an agency will defend its withholdings through affidavits describing the documents in question. "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

FOIA also requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). That said, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." *Id.* at 1117.

## III. Analysis

In its renewed motion, the Department represents that it voluntarily released the June 30 email chain to ACLJ. *See* ECF No. 30-1 ("Def.'s MSJ Br.") at 1; ECF No. 30-3 ("Brinkmann Decl.") ¶ 6. Thus, the only document still at issue is the withheld attachment to the July 11 email, titled "Top Line TPs (Final)." *See* ECF No. 25-2 at 20–23. The Department withheld the attachment under Exemption 5 and the deliberative-process privilege, explaining that it consists of three pages of talking points prepared for Attorney General Lynch, and it maintains that it contains no non-deliberative portion that could reasonably be segregated. *See* Brinkmann Decl. ¶¶ 7, 9. The Court will address the applicability of the exemption and the Department's representations about segregability in turn.

### A. Exemption 5

The Department invokes the deliberative-process privilege, codified by Exemption 5, to justify withholding the entire attachment to the July 1 email. *See* ECF No. 25-2 at 20–23; Def.'s

4

MSJ Br. at 1. The email itself, released in full and containing no text in its body, was sent by an employee in the Department's Office of Legislative Affairs to staff in the Office of the Attorney General. *See* ECF No 25-2 at 20; Brinkmann Decl. ¶ 7. In its initial filings, the Department provided no specific description of that attachment, and unlike the other withheld records, the Court could glean nothing about it from the record. *See ACLJ*, 325 F. Supp. 3d at 174–75. In the Department's supplemental affidavit, however, an official describes the withheld attachment as "consist[ing] of three pages of talking points . . . prepared for Attorney General Lynch . . . pertain[ing] to [her] decision—publicly announced on July 6, 2016—to accept the recommendation of the Federal Bureau of Investigation (FBI) that its investigation of Secretary Clinton's use of a personal email system during her time as Secretary of State be closed." Brinkmann Decl. ¶ 7. According to the official, these talking points—marked "Confidential – Pre-Decisional Draft"—were prepared by Department staff "for Attorney General Lynch['s] . . . use when interacting with the public or the press." *Id.* And she explains that the talking points are responsive to Plaintiff's request because "a portion of them reference[] the Lynch-Clinton tarmac meeting." *Id.*

Relying on the Court's conclusions in its prior opinion, the Department contends that this attachment, like the other sets of talking points prepared by junior staffers for more senior officials that the Court found the Department could properly withhold, is protected by the deliberative-process privilege. *See* Def.'s MSJ Br. at 2. The Court agrees.

Before examining whether the privilege covers the document at issue, the Court briefly recounts relevant portions of its prior opinion relating to Exemption 5 and the deliberative-process privilege. "The deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151

(D.C. Cir. 2006). "A document is 'predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process.'" *ACLJ*, 325 F. Supp. 3d at 171 (quotation marks omitted) (quoting *Judicial Watch*, 449 F.3d at 151). And many times courts in this Circuit have found that the privilege applies to agency deliberations about future public statements, including talking points. *See id.* at 171–72 (collecting cases). As the Court made clear, however, that protection is not categorical. The key, as with any privilege, is context. *See id.* at 172 (citing *Heffernan v. Azar*, 317 F. Supp. 3d 94, 125–28 (D.D.C. 2018)).

In granting partial summary judgment for the Department, the Court held that the Department properly withheld "various iterations of a set of talking points prepared for Attorney General Lynch, who used them in a June 28[,] [2016,] press conference." *Id.* at 173. While recognizing that talking points may not always fall under the deliberative-process privilege—particularly when they are "intended by agency decisionmakers to be followed literally such that they . . . represent the agency's decision about what to say," *id.*—the Court reasoned that talking points are often subject to the privilege by their very nature; they are "typically documents 'prepared by [government] employees for the consideration of [government] decision-makers'" in determining how to respond to the press. *Id.* (alterations in original) (quoting *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 174 (D.D.C. 2004)). And this privilege, the Court held, extended to even those "final" versions of talking points prepared by staffers for Attorney General Lynch. *Id.* This is so because the "final decision" of the agency was what the senior official—here, Attorney General Lynch—ultimately said to the media. *Id.*

Upon consideration of the additional context provided by the Department in its renewed motion, the Court finds that the withheld attachment also falls within the ambit of the

6

deliberative-process privilege and Exemption 5.  The Department official represents that these talking points were prepared by Department staff for Attorney General Lynch in anticipation of her future interactions with the public and the press about her announcement that she was accepting the FBI's recommendation to close the investigation into former Secretary of State Hillary Clinton.  Brinkmann Decl. ¶ 7.  And so, like the other sets of talking points withheld by the Department, the attachment constitutes a recommendation by subordinates to their superior advising her how to respond to inquiries.  It is, in that respect, both predecisional and deliberative, reflecting a part of the give-and-take between the drafter and the Attorney General leading up to her external interactions.  *See ACLJ*, 325 F. Supp. 3d at 173 ("[A] senior official—especially one as high-ranking as the Attorney General—may elect to use all, some, or none of the talking points prepared for her.").

In response, ACLJ insists that the Department has not provided enough context for the Court to determine whether the withheld talking points remain protected under the privilege.  *See* ECF No. 31-1 ("Pl.'s MSJ Br.") at 3.  It argues that "the agency fails to explain whether a superior reviewed and approved the final draft forwarded by staff in the attached email; whether the memorandum was reviewed and used by the Attorney General; whether it was followed closely . . . [;] and/or how it has been used in dealings with the public."  *Id.*  But these objections, much like those raised in its prior summary judgment motion, do not undermine the Court's conclusion.

To begin with, it is not entirely clear what "superior[s]" ACLJ is referring to, and, in any event, how that information would alter the analysis.  As the Department official declares, and the unredacted email confirms, these draft talking points were sent directly to the Office of the Attorney General "for her use."  Brinkmann Decl. ¶ 7; *see also* ECF No. 25-2 at 20.  To the

7

extent that other intermediaries were involved before the Attorney General—and there is no indication from the record, including the results of the Department's search, that that was the case—the recommended talking points would remain just that: recommendations to the Attorney General.

As to whether the Attorney General ultimately relied on the talking points when interacting with the public and the press, the Court holds, as it did in its prior opinion, that any such reliance does not defeat the privilege here. According to the Department, the draft talking points contain "*proposed*" responses to the public about certain topics, including Attorney General Lynch's meeting with President Clinton. Brinkmann Decl. ¶ 7 (emphasis added). But "[t]he final decision was what Attorney General Lynch actually said to the [public and the] media, which is, of course, already a matter of public record." *ACLJ*, 325 F. Supp. 3d at 173. To be sure, "a document can lose its predecisional character—and the protections of the privilege— if an agency adopts the document as its own." *Judicial Watch, Inc. v. U.S. Dep't of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017). But the agency "must make an '*express*[]' choice to use a deliberative document as a source of agency guidance." *Id.* (alteration in original) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161 (1975)). The Attorney General's ultimate reliance on the proposals from her subordinates—to the extent that occurred here—does not amount to such an express and unequivocal choice. And furthermore, as the Court has previously noted, "sticking to talking points often does not entail a verbatim recitation, leaving open the possibility that 'a simple comparison' of the talking points with the [Attorney General's] public remarks would reveal the agency's deliberations" that the privilege is intended

to protect. *ACLJ*, 325 F. Supp. 3d at 174 (quoting *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1538 (D.C. Cir. 1993)).[1]

For all these reasons, the Court finds that the deliberative-process privilege protects the attachment at issue, and thus the Department properly withheld it under Exemption 5.

**B.     Segregability**

Turning to FOIA's segregability requirement, the Department has withheld the three-page set of talking points in full, finding that the document contains no reasonably segregable material. *See* Brinkmann Decl. ¶ 9. But ACLJ argues that the Department has failed to provide the Court with sufficient explanation of that decision, insisting that the Department must state with more particularity the proportion of the information in the talking points that is non-exempt. *See* Pl.'s MSJ Br. at 4.

In its prior opinion, the Court concluded that the Department's representation that it conducted a line-by-line review of each withheld document, along with its explanation that the "factual content [contained in the withheld talking points and press statements] was generally intertwined with the advice being given and thus could not be segregated," was enough to trigger a presumption in favor of the Department's compliance with FOIA's segregability requirement. *ACLJ*, 325 F. Supp. 3d at 175 (citing *Sussman*, 494 F.3d at 1117). The Department makes the same representations here, *see* Brinkmann Decl. ¶ 9; ECF No. 22-1 ¶ 18, and the Court therefore reaches the same conclusion, shifting the burden to ACLJ to "cast doubt on [the Department's]

---

[1] That is not to say that proposed talking points may never be adopted by the agency "as its own" such that they lose their privilege. Such a case may arise, for instance, when the "talking points represent the final, settled 'party line,'" and are circulated to employees of the agency accordingly. *Judicial Watch, Inc. v. U.S. Dep't of State*, 349 F. Supp. 3d 1, 10 (D.D.C. 2018). But nothing in the record suggests that these talking points were repurposed in such a fashion here. Indeed, if that were the case, the Court would expect the Department's search to have revealed as much.

compliance," *ACLJ*, 325 F. Supp. 3d at 175. ACLJ continues to insist that the Department must indicate the precise *proportion* of non-exempt information. But ACLJ never explains why that showing is necessary, or, more importantly, how it would help rebut the presumption afforded to the Department due to its representation that the entire attachment was comprised of proposed talking points which "prevent[] segregation inasmuch as the material itself, and selected facts therein, embod[y] the deliberative process." ECF No. 22-1 ¶ 18; Brinkmann Decl. ¶ 9. For these reasons, ACLJ's rebuttal falls short.[2]

## IV. Conclusion

For all these reasons, the Court will, by separate order, grant Defendant's Renewed Motion for Summary Judgment, ECF No. 30, deny Plaintiff's Cross-Motion for Summary Judgment, ECF No. 31, and enter judgment for Defendant.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: June 30, 2018

---

[2] ACLJ's appeal to *Juarez v. Department of Justice*, 518 F.3d 54 (D.C. Cir. 2008), is misplaced. *See* Pl.'s MSJ Br. at 5. The agency in that case had invoked FOIA Exemption 7(A), which protects records compiled for law enforcement purposes, and thus its justifications for why it could not extricate non-sensitive information included several ways in which that information could jeopardize the specific ongoing investigation with which it was associated. *See Juarez*, 518 F.3d at 56. Unsurprisingly, the Department's justification here—that revealing non-exempt factual information in the talking points would still reveal aspects of the agency's deliberative process protected by the deliberative-process privilege and Exemption 5—is relatively less specific.